[No. 4,288.]

# FAXON D. ATHERTON v. THE BOARD OF SU-PERVISORS OF SAN MATEO COUNTY.

ELECTION FOR REMOVAL OF COUNTY SEAT.—When an election is held for the removal of a County Seat, under Chapter II, Title I, Part IV, of the Political Code, and a majority of the electors vote in favor of retaining the County Seat where it is, the Board of Supervisors may, at any time, upon the presentation of a proper petition, order a second election for the same purpose. The statute does not restrict the number of elections which may be held, so long as the place of the County Seat is not changed.

GRANTING A REHEARING.—If, upon the argument of a cause in which the proceedings of a Board of Supervisors are sought to be reversed by *certiorari*, any issue of fact is waived, and the question presented is one of law, the counsel cannot, after a decision on the point of law, have a rehearing on the ground that there is a question of fact which should be determined.

CERTIORARI to the Board of Supervisors of San Mateo County, to review certain proceedings of the Board, the nature of which is stated in the opinion.

*Campbell, Fox & Campbell*, for Petitioner.

*W. H. L. Barnes*, for Respondent.

By the Court, WALLACE, C. J.:

It appears by the petition for the writ of *certiorari*, and the return to the writ, that, in the year 1873, an election was held (under the provisions of the Political Code concerning the removal of county seats by popular elections to be held for that purpose,) but that, at such election, Redwood City, the place at which the county seat of San Mateo County was then already fixed by law, obtained a majority of all the votes cast, and thereupon the Board of Supervisors gave public notice of the fact as required by law. It further appears that in the present month of May another popular election for the same purpose as the first had been ordered by the Board, to be holden in the month of June next, and that the order was made upon the presentation

to the Board of a petition signed by qualified electors of the county of San Mateo, equal in number to one third of all the votes cast in the county at the last general election. It is now claimed by the petitioner, that, in making this order the Board exceeded its jurisdiction, and that its proceedings in that behalf should be annulled.

The Political Code, (Sec. 3,976 *et seq.*,) provides that whenever the inhabitants of any county of the State desire to remove the county seat of the county from the place where it is fixed by law, they may present a petition to the Board of Supervisors of the county, praying such removal, and that an election be held to determine to what place such removal be made.

If the petition so presented be signed by qualified electors of the county equal in number to at least one third of all the votes cast in the county at the last preceding general election, it is made the duty of the Board to order that the election be held. Other provisions of the statute direct in detail the mode in which the election is to be conducted, and provide that when its result has been ascertained by the Board, if it appear that a majority of all the votes cast are in favor of any particular place, the Board must give public notice of the result, in which notice they shall designate the place so selected to be the county seat, and must declare it to be such from and after a day to be specified in the notice; and it is further provided that from and after the day named in the notice, the place therein designated shall be the county seat of the county.

It is to be observed that the provision is, whenever the inhabitants desire a removal of the county seat, a petition of the prescribed character may be presented, and the required order for the election be made.

This language, considered by itself, would import that the right of the electors to petition the Board, and the corresponding duty of the Board to direct an election upon the presentation of a proper petition, are not exhausted or at all affected by the mere fact of an election already theretofore held for the same purpose. But it is provided by the statute (Sec. 3,984) that if at an election already held, a

majority of the votes were cast for some other place than that fixed by law as the former county seat, no second election for the removal thereof must be held within two years thereafter, and (Sec. 3,985) that two elections to effect such removal shall not be held within any three years.

These seem to be the only limits set by the statute· to the right it confers upon the electors to petition for, and the duty it imposes upon the Board to order an election to remove a county seat.

It is clear that the election held in the county of ·San Mateo, in 1873, did not effect a removal of the county seat of that county, because a majority of all the votes cast at that election were not " cast for some other place than that fixed by law as the former county seat," but, on the contrary, the majority was cast for Redwood City, which was at the time already the county seat of the county fixed by law.

It is argued, however, by the counsel for the petitioners that the fact that a majority of the votes cast at the election were in favor of Redwood City, operated in itself a removal within the intent of the statute, so as to inhibit the holding of any other election to remove the county seat within two years thereafter.

It is urged that though the mere locality of the county seat remained unaltered by that election, yet the tenure by which, and the authority upon which the county seat was maintained at Redwood City after the election, was a new tenure, and on authority different from that upon which it had been theretofore held there.   But we think that this position, however ingenious, cannot be maintained as a sound construction of the statute, or a correct exposition of its meaning.   We think that the removal of the county seat mentioned in the statute means that change of the locality of the county seat which is only to follow when " a majority of the votes are cast for some other place than that fixed by law as the former county seat."

It is urged by counsel that this construction of the statute, if indulged, will leave no check upon the power of a factious minority to agitate continuously, and without cessation, the question of removal of the county seat of any

county, by means of frequent petitions presented for that purpose, and so force the majority into compliance with its views, in order to avoid the expense notoriously attending the frequent holding of elections for the removal of the county seat.

Whether the statute in this respect be ill or well founded in point of mere policy, is a matter, however, with which we cannot concern ourselves here. It is our duty to enforce it as we find it plainly expressed on the statute book, unless, indeed, it appear to be obnoxious to objections of a constitutional character; and none such have been suggested here.

The writ must therefore be dismissed, and it is so ordered.

Mr. Justice RHODES did not express an opinion.

By the COURT, on petition for rehearing.

Upon the argument of the cause the question presented by counsel was understood to be one of law alone—any possible issue of fact being expressly waived—and the decision of the Court was of course confined to the mere question of law involved. It is too late now to suggest, upon petition for rehearing, that, after all, there are questions of fact which the petitioner desires to have determined, and upon which he might have relied, had he chosen to do so.

Rehearing denied.