8545

ATKINSON v. SOUTHERN EXPRESS CO.

LIQUORS—WEBB ACT—CONSTITUTIONAL LAW—INTERSTATE COMMERCE.—
The recent act of Congress known as the Webb Act divests intoxicating liquors of their interstate commerce character and invests the respective States with power either to prohibit the importation absolutely or allow it only for sale and use through a dispensary. In the cases of *Rhodes* v. *Iowa,* 170 U. S. 412; *Scott* v. *Donald,* 165 U. S. 107; *Vance* v. *Vandercook,* 170 U. S. 468; *Louisville Etc.* v. *Brewing Co.,* 32 C. C. A. 189, and *State* v. *Rookard,* 87 S. C. 443, it has been held that a State statute prohibiting the delivery in a State by a common carrier of intoxicating liquors was void as in contravention of the interstate commerce provisions of the Federal Constitution. The Webb Act does not put new life into a similar act in this State, nor make such act retrospective; but the legislature of this State may now pass an act prohibiting the sale of intoxicant liquors in this State except through the dispensaries, and such act would be held valid under the Webb Act.

Petition in the original jurisdction of this Court for injunction by W. W. Atkinson against Southern Express Company.

*Messrs. John Gary Evans* and *John J. Earle,* for petitioner.

*Messrs. Barron, Moore, Barron & McKay,* for relator.

*Assistant Attorney General F. H. Dominick,* on behalf of the State.

May 14, 1913. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. We approach the solution of the question under consideration with a full appreciation of our responsibility and its far-reaching consequences throughout the country. And we shall brush aside technical objections and endeavor to rest our conclusion upon such well settled principles as must be given recognition by all, except those in favor of judicial legislation.

This is an application to the Court, in the exercise of its original jurisdiction, for an order enjoining the defendant from enforcing the following regulation adopted by the defendant, to wit: "No intoxicating liquors should be received for or delivered at destination in the State of South Carolina, except when addressed to county dispensaries established by law. If any prohibited shipment should reach destination in South Carolina, they must be returned by first express to consignor, subject to charge both ways." * * *

The determination of the plaintiff's right to relief for which he prays, is dependent upon the construction of what is denominated the Webb Act, in connection with the statutes of the State, which was recently adopted by Congress, and is as follows:

"An act to divest intoxicating liquors of their interstate commerce character, in certain cases.

"Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assem-

bled, That the shipment or transportation, in any manner or by any means whatsoever, of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one State, territory or district of the United States, or place noncontiguous to, but subject to the jurisdiction thereof, into any other State, territory or district of the United States, or place noncontiguous to, but subject to the jurisdiction thereof, or from any foreign country into any State, territory or district of the United States, or place noncontiguous to, but subject to the jurisdiction thereof, which said spirituous, vinous, malted, fermented or other intoxicating liquor is intended by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State, territory or district of the United States, or any place noncontiguous to, but subject to the jurisdiction thereof, is hereby prohibited."

Before proceeding to construe said act, it may be well to state, in a general way, the previous law in regard to the transportation of alcoholic liquors from one State into another.

In 1890 Congress passed an act, entitled, "An act to limit the effect of the regulations of commerce between the several States and with foreign countries, in certain cases." This was known as the "Wilson Act," and its provisions were as follows: "That all fermented, distilled, or other intoxicating liquors or liquids transported into any State or territory, or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such State or territory, be subject to the operation and effect of the laws of such State or territory, enacted in the exercise of its police powers, to the same extent, and in the same manner, as though such liquids or liquors had been produced in such State or territory, and shall not be exempt therefrom, by reason of being introduced therein, in original packages or otherwise." 26 Stat. U. S. 313.

In the case of *Rhodes* v. *Iowa,* 170 U. S. 412, it was held that under the Wilson Act, a State law attaches to an inter-state commerce shipment *only* after the arrival of the goods at their destination and their delivery to the consignee; and that a State statute attempting to operate upon the liquors so shipped before they reached their destination and were delivered to the consignee, was unconstitutional.

In the case of *Scott* v. *Donald,* 165 U. S. 107, the Court had under consideration the construction of a statute of this State, containing provisions similar to those herein-before mentioned, and used this language: "A law may forbid entirely the manufacture and sale of intoxicating liquors and be valid, but the State can not under the congressional legislation referred to (act of 1890), establish a system which, in effect, discriminates between interstate and domestic commerce in commodities, to make and use which, are admitted to be lawful. * * * It is sufficient for the present case to hold, as we do, that when a State recognizes the manufacture, sale and use of intoxicating liquors as lawful, it cannot discriminate against the bringing of such articles in and importing them from other States; that such legislation is void, as a hindrance to interstate commerce, and an unjust preference of the products of the enacting State, as against similar products of the other States."

The Court in the case of *Vance* v. *Vandercook,* 170 U. S. 468, had under consideration the constitutionality of the dispensary law of this State, then of force. In that case the Court said: "In the inception it is necessary to bear in mind a few elementary propositions, which are so entirely concluded by the previous adjudications of this Court that they need only to be briefly recapitulated.

"(a) Beyond dispute the respective States have plenary power to regulate the sale of intoxicating liquors within their borders, and the scope and extent of such regulations depend, solely, on the judgment of the law-making power of the States, provided, always, they do not transcend the

limits of the State authority by invading rights, which are secured by the Constitution of the United States, and provided, further, that the regulations as adopted, do not operate a discrimination against the rights of residents or citizens of other States of the Union.

"(b) Equally well established is the proposition that the right to send liquors from one State into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and hence that a State law which denies such a right, or substantially interferes or hampers the same, is in conflict with the Constitution of the United States."

In reply to the argument that the South Carolina statute then under consideration, was not discriminatory, for the reasons therein relied upon, the Court further said: "But the weight of the contention is overcome when it is considered that the interstate clause of the Constitution guarantees the right to ship merchandise from one State into another, and protects it until the termination of the shipment, by delivery at the place of consignment; and this right is wholly unaffected by the act of Congress which allows State authority to attach to the original package before sale, but only after delivery. It follows that under the Constitution of the United States *every resident of South Carolina is free to receive for his own use, liquor from another State, and that the inhibitions of the State statute do not operate to prevent liquors from other States from being shipped into such State, on the order of a resident for his use. * * * The right of persons in one State to ship liquor into another State, to a resident for his own use, is derived from the Constitution of the United States, and does not rest on the grant of the State law."* (Italics added.)

In the case of *Louisville etc.* v. *Brewing Co.,* 32 C. C. A. Rep. 189, the Court had under consideration the statute of Kentucky, which provides that it shall be unlawful for any

common carrier to transport beer or intoxicating liquor to a consignee, in any locality within the State where the sale of such liquor has been prohibited by voice of the people, under the local option law of the State.

The Court said: "The legality of the attitude of the railroad company toward interstate shipments of intoxicating liquors to local option points in Kentucky, must turn upon the validity of that legislation as applied to interstate shipments.

"By a long line of decisions, beginning even prior to *Leisy* v. *Harden,* 135 U. S. 100, it has been indisputably determined:

"(a) That beer and other intoxicating liquors are a recognized and legitimate subject of interstate commerce.

"(b) That it is not competent for any State to forbid any common carrier to transport such articles from a consignor in one State to a consignee in another.

"(c) That until such transportation is concluded by delivery to the consignee, such commodities do not become subject to State regulation restraining their sale or disposition.

"The Wilson Act (26 Stat. at L. 313, chap. 728, U. S. Comp. Stat. 1901, p. 3177), which subjects such liquors to State regulation, although still in the original packages, does not apply before actual delivery to such consignee, where the shipment is interstate. Some of the many later cases in which these matters have been so determined and the Wilson Act construed are *Rhodes* v. *Iowa,* 170 U. S. 412; *Vance* v. *W. A. Vandercook Co.,* 170 U. S. 438; *Heyman* v. *Southern R. Co.,* 203 U. S. 270, 7 A. & E. Ann. Cas. 1130; *Adams Exp. Co.* v. *Kentucky,* 214 U. S. 218.

"Valid as the Kentucky legislation undoubtedly was as a regulation in respect to *intrastate* shipments of such articles, it was most obviously never an effective enactment, in so far as it undertook to regulate interstate shipments to dry points."

In the case of *State* v. *Rookard,* 87 S. C. 443, 69 S. E. 1076, the Court had under consideration the question whether there was error on the part of his Honor, the Circuit Judge, in ruling that section I of the dispensary statute of 1909 prohibited the keeping in possession of liquor, under all circumstances, without regard to the manner of acquiring possession, or the purpose for which it was kept.

The Court said: "It seems clear that the statute can not be so construed. Such a construction would make the act self-destructive; for other sections of this act, as well as portions of the dispensary statute of 1907, recognized by this statute as still of force, provide for the sale of liquor by county dispensaries; and certainly a legal sale and purchase carries the right to the purchaser to keep in his possession the liquor he has purchased, provided he does not apply it to an unlawful use. In addition to this, one may lawfully keep in possession liquor purchased for personal use, under the protection of the interstate commerce clause of the Federal Constitution. An attempt by the General Assembly to interfere with this right would be futile, and the presumption is very strong against the legislative intention to make such an attempt. Indeed, the right to keep in possession liquor so purchased is expressly recognized in section 28 of the Dispensary Act of 1907, which has not been repealed."

Under the laws of this State, each county is empowered to exercise what is commonly known as the right of local option, for the purpose of determining whether liquors or beverages may be sold therein, by the county, through an officer called a dispenser, in the manner provided by the statute.

Elections for the purpose of determining such question were held in the respective counties, and as a result the county of Richland (in which the city of Columbia is situate) and five other counties voted for the sale of alcoholic liquors, and there are dispensaries at this time in those counties.

This case arose in Richland county.

Section 794 of the Criminal Code provides that "all alcoholic liquors and beverages, whether manufactured in this State or elsewhere, or any mixture by whatsoever name called, which, if drunk to excess, will produce intoxication, are hereby declared to be detrimental, and their use and consumption against the morals, good health and safety of the State and contraband." * * *

Section 814 of the Criminal Code is as follows: "All fermented, distilled or other liquors or liquids containing alcohol, transported into this State, or remaining herein for use, consumption, storage, or other disposition, shall, upon introduction and arrival in this State, be subject to the operation and effect of this law to the same extent and in the same manner as though such liquors or liquids had been produced in this State."

Section 825 contains the following provisions: "No person except as expressly permitted in this chapter, shall bring into this State, or transport from place to place in this State, by wagon, cart or other vehicle, or by any other means or mode of carriage, any liquor or liquids containing alcohol, under a penalty of one hundred dollars, or imprisonment for thirty days for each offense, upon conviction thereof as for a misdemeanor. * * * *Provided,* That said penalty shall not apply to any liquor in transit, when changed from car to car to facilitate transportation across the State: *Provided, further,* That this section does not apply to liquors in course of shipment to a county dispensary, or purchased from a county dispensary and being transported for a lawful purpose to some place in a county where there is a dispensary and their delivery is otherwise lawful. All liquors in this State, except those purchased from a county dispensary for a lawful use, and those passing through this State, consigned to points beyond this State, shall be deemed contraband, and may be seized in transit without warrant. And any steamboat, sailing vessel, railroad, express com-

pany or other common carrier transporting or bringing into this State, alcoholic liquors for sale or use therein, except by the dispensary, shall suffer a penalty of five hundred dollars." * * *

From the foregoing it clearly appears that the provisions of the dispensary law, in so far as they attempt to prohibit the importation of liquor into the State from another State for personal use, were unconstitutional when the statute was enacted. It was because of this fact that liquors for personal use have been permitted to be brought from another State into a county, even after the sale and use of liquor had been prohibited therein, as the result of an election, under the local option laws.

We next proceed to determine whether the provisions of the dispensary statutes which we have declared were unconstitutional, became operative after the adoption of the recent act of Congress.

The removal of the constitutional objections to a statute that rendered it null and void, does not, by operation of law, give it force and effect, nor can it be made valid by a subsequent statute.

One reason why vitality cannot be imparted to an unconstitutional statute is, that after the objections that rendered it null and void are removed, it might have an entirely different effect from what it had when it was enacted. Let us take the present case as an illustration.

When the elections were held under the local option laws of 1907, for the purpose of determining whether the sale of liquor should be permitted or prohibited in the respective counties, the electors were presumed to know the law. Prior to that time the United State Supreme Court had rendered a decision in *Vance* v. *Vandercook,* 170 U. S. 468, and in the other cases hereinbefore mentioned, which held that any resident or citizen of this State had the right to order liquor from another State for his own personal use, and that when it was brought into the State and delivered

to him, it was not subject to seizure under the State laws, for the reason that a State statute prohibiting the importation of liquor into the State was discriminatory, *as long as the State recognized it as a legitimate subject of commerce, by authorizing its sale through a dispensary.*

Even when the liquor was imported for personal use into a county where the sale thereof was absolutely prohibited, the liquor was not subject to seizure.

The fact that an elector may have been willing to vote against the sale of liquor in a county, except when it was imported therein from another State for personal use, does not necessarily show that he would be willing to vote against the sale of liquor therein, when he knew that he could not import it, for that purpose.

"When a statute is adjudged to be unconstitutional, it is as if it never had been. Rights can not be built up under it; contracts which depend upon it for their consideration are void; it constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made. And what is true of an act void *in toto,* is true, also, as to any part of an act which is found to be unconstitutional, and which, consequently, is to be regarded as having never, at any time, been possessed of any legal force." Cooley's Con. Lim. 222.

"Courts are bound to treat unconstitutional enactments as void, in whatever proceedings they may be encountered. An unconstitutional statute, though having the form and name of law, is in reality no law." *Ex parte* Hollman, 79 S. C. 9, 60 S. E. 19.

"The pivotal point in a healing or validating statute is, that it must be confined to acts *which the legislature could previously have authorized.*" (Italics added.) *State* v. *Whitesides,* 30 S. C. 579, 9 S. E. 661, 3 L. R. A. 777n; *State* v. *Neely,* 30 S. C. 587, 9 S. E. 664, 3 L. R. A. 672.

"Although necessarily retroactive, curative acts are not for that reason invalid; for the general rule is that the leg-

islature can validate any act which it might *originally* have authorized." 26 Enc. of Law, 698-9; *Hodge* v. *School District*, 80 S. C. 518, 61 S. E. 1009.

In the case of the *State* v. *Tufty*, 20 Nev. 427, 19 Am. St. Rep. 374, there was an application for a writ of mandamus requiring the State treasurer to invest a certain amount, pursuant to the provisions of an amendatory act, which was passed under the mistaken belief that a proposed amendment to the Constitution had been legally adopted, but which the Court declared was null and void. Thereafter there was an election for the purpose of determining whether said amendment should be adopted, and after the election the question before the Court was, whether the subsequent adoption of the constitutional amendment gave force and effect to the statute, which had been declared to be unconstitutional.

In denying the application for a writ of mandamus, the Court used this language:

"It is a misnomer to call such an act a law. It has no binding authority, no vitality, no existence. It is as if it had never been enacted, and it is to be regarded as never having been possessed of any legal force or effect. The act being void, no subsequent adoption of an amendment to the Constitution authorizing the legislature to provide for such investment would have the effect to infuse life into a thing that never had any existence."

In the case of *Vance* v. *Vandercook*, 170 U. S. 468, it was held that the provisions of a previous statute, which had been declared to be unconstitutional, could not be considered as part of a statute subsequently enacted, from which they were omitted, merely because they were not inconsistent with its provisions, when there was a clause which only repealed those statutes that were inconsistent with it. In that case the Court thus stated the principle: "The law now before us was passed subsequent to the decision in *Scott* v. *Donald*, holding that the discriminatory clauses in the pre-

vious act were void, and it entirely omits them. Its repeal-ing clause, however, only repeals laws inconsistent there-with; and the argument is, that, as the provisions found in the previous law, and which were declared unconstitutional by this Court are not inconsistent with the present law, therefore they continue to exist, and the present law must be interpreted as if they were written in it. The error of the argument is so self-evident as to require only a passing notice. The very fact that the omitted provisions had been before the enactment of the new law, declared to be uncon-stitutional, affords a conclusive demonstration of their inconsistency with the present law."

It was not the intention of the Webb Act to interfere with the policy of the State in regard to the importation of liquors, but merely to provide that the enforcement of a State statute would not be interfered with or hampered by the interstate commerce laws.

In other words, the act in this respect is passive, while it is incumbent on the States to enact legislation of an active nature if they are desirous of prohibiting the importation of liquors for personal use or other purpose. But even if Congress had undertaken to give validity to an unconstitu-tional State statute, it would have been beyond its powers.

While the legislature cannot pass an act validating the provisions of the dispensary statute, which we have declared to be unconstitutional, so as to give it a retroactive effect, it nevertheless has the power to adopt a statute with similar provisions, having a prospective effect prohibiting alco-holic liquors from being imported into this State.

Such a statute would not contravene any provision of the United States Constitution. As we have already said, the recent act of Congress divests intoxicating liquors of their interstate commerce character, and invests the respec-tive States with power, either to prohibit the importation absolutely or allow it only for sale and use through a dis-pensary. The classification of the counties, so as to allow

the sale of liquor in some of them, while it is prohibited in others, would not be violative of section I of the Fourteenth Amendment to the Constitution of the United States, which provides that no State shall deny to any person within its jurisdiction the equal protection of the laws.

The rule is thus stated in *Ohio* v. *Dollison,* 194 U. S. 445 : "Plaintiff in error urges that to make an act a crime in certain territory, and permit it outside of such territory, is to deny to the citizens of the State the equal operation of the criminal laws; and this he charges against, and makes a ground of objection to the Ohio statute. This objection goes to the power of the State to pass a local option law, which we think is not an open question. The power of the State over the liquor traffic we have had occasion very recently to decide. We said, affirming prior cases, the sale of liquor by retail may be absolutely prohibited by a State. That being so, the power to prohibit it conditionally was asserted, and the local option law of Texas was sustained."

These conclusions render unnecessary the consideration of the question whether the Webb Act is constitutional.

It is the judgment of this Court that the petitioner is entitled to the order of injunction for which he prays.

MR. JUSTICE FRASER. I concede that the above statement so strongly made, is correct, but I dissent from the judgment. The regulation complained of in the petition refers exclusively to interstate commerce, and I think this Court has no jurisdiction to interfere.