KAY JEWELRY COMPANY *v.* KAPILOFF *et al.*

No. 16281. JULY 15, 1948. REHEARING DENIED JULY 28, 1948.

*Heyman, Howell & Heyman* and *Morris B. Abram,* for plaintiff.

*Noah J. Stone,* for defendants.

CANDLER, Justice.   This case presents a problem arising out of an alleged infringement of a trade name and unfair trade competition.   It comes to this court on exceptions to a judgment of the Superior Court of Fulton County sustaining a general demurrer to a petition seeking injunctive relief, filed by Kay Jewelry Company against the defendants, trading under the name of Kay's Credit Clothiers.   The controlling question posed by the writ of error is whether, in order to obtain equitable relief in an action for infringement of a trade name and unfair trade competition, it is necessary for the plaintiff to allege and show that the alleged infringer is in actual and direct market competition with the plaintiff in the sense that he deals in competitive goods or is engaged in a competitive business.   This question has never been directly passed upon in this State.

In our reported cases where the question of unfair trade competition was involved, the litigants were engaged in a competitive business or dealt in competitive goods, and the "passing off" rule has been sufficient to afford a test as to whether there was unfair competition.   The test under this rule is whether the goods or business of one are in fact "passed off" as the goods or business of another, and it has been said, in cases between litigants in actual and direct market competition, that nothing less than such conduct will constitute unfair competition.   *Carter* v. *Carter Electric Co.,* 156 *Ga.* 297 (119 S. E. 737) ; *Atlanta Paper Co.*

v. *Jacksonville Paper Co.*, 184 *Ga.* 205 (190 S. E. 777). The Code, § 37-712, declares that "Any attempt to encroach upon the business of a trader, or other person, by the use of similar trade-marks, names, or devices, with the intention of deceiving and misleading the public, is a fraud, for which equity will grant relief." This being a remedial statute and designed for the suppression of fraud, it should be liberally construed—"such construction being for the furtherance of justice." *Carey* v. *Giles*, 9 *Ga.* 253; *Scott* v. *Mount Airy*, 186 *Ga.* 652 (198 S. E. 693). Accordingly, the words, "encroach upon the business of a trader," can not be said to limit the equitable relief available under the statute to those in direct and actual market competition with an alleged infringer, or to those cases where it is shown that there has been an actual diversion of trade from one business to another.

There are two distinct views among other jurisdictions that have directly passed upon this question. The early common-law rule, and the rule still maintained in some jurisdictions, has been to the effect that there must be shown actual or direct competition between the litigants as an essential prerequisite to relief in an action for infringement of a trade name or unfair trade competition. Under this view, the exclusive test is whether there is a diversion of trade from one business to another, and injury to the good will and reputation of the original user of the trade name, or other injuries as contemplated by the theories of relief, hereinafter shown, afford no basis for equitable relief. It has been stated that, generically, the term "unfair competition" presupposes a real or actual competition, and the aid of equity can not be invoked unless such competition be shown. On this view see generally: 52 Am. Jur. 575, § 96; 63 C. J. 389; 148 A. L. R. 12; Borden Ice Cream Co. *v.* Borden's Condensed Milk Co., 201 Fed. 510; Hub Dress Mfg. Co. *v.* Rottenberg, 237 Mass. 281, (129 N. E. 442); Acme Screen Co. *v.* Pebbles, 159 Okla. 116 (14 Pac. 2d, 366); Philco Corp. *v.* Phillips Mfg. Co., 133 Fed. 2d, 633 (148 A. L. R. 125); Atlas Mfg. Co. *v.* Street, 204 Fed. 398; 232 U. S. 724 (34 Sup. Ct. 602, 58 L. ed. 815); Yellow Cab Co. *v.* Sachs, 191 Cal. 238 (216 Pac. 33, 28 A. L. R. 105).

"But the tendency of the courts has been and is to widen the scope of protection in unfair competition, and to hold that it is

not confined to actual market competition." Churchill Downs Distilling Co. *v.* Churchill Downs, 262 Ky. 567 (90 S. W. 2d, 1041). Under the modern view, the emphasis in cases concerning an infringement of trade name or unfair trade competition is no longer on direct and actual market competition, or diversion of trade from one business to another, but rather on the injury suffered by the complaining party and the public from the confusion resulting from the infringer's acts.

In 38 Harvard Law Review, 370, the author, in speaking of the necessity for actual market competition in cases involving the question of unfair competition, says:

"The truism that law is a developing science is nowhere more strikingly illustrated than in the law of unfair competition. As late as 1742, Lord Hardwicke 'knew of no instance of restraining one trader from making use of the same mark with another.' During the next century the common law of trade-marks took shape. But just as soon as this body of law became reduced to a set of rigid rules, trading pirates adopted many new devices for taking advantage of the good-will of other men's businesses, which very cleverly avoided these rules. To protect the honest business man against these impostors, equity developed the law of unfair competition.

"But the courts were to a great extent handicapped by the precedents of an era when unregulated competition legalized a very low type of commercial morality. In addition, the usual cases demanding relief under the law of unfair competition in the early days of equity's protection happened to be simple cases of one trader's passing off his goods as those of a rival, so that 'passing off' would explain practically all the decisions. . .

"Courts of equity in these unfair competition cases are seeking to protect the good-will and reputation of the plaintiff. Insistence by the courts upon the presence of competition between the parties can only be justified upon a theory that good-will and reputation can only be damaged by competitors. But such a theory is untenable, in the light of human experience. If the defendant's conduct is likely to cause confusion of the traders, so that the public believes or is likely to believe that the goods of the defendant are the goods of the plaintiff, or that the plaintiff is in some way connected with or is a sponsor for the defend-

ant, then a sufficient case is made out for injunctive relief. The result of a contrary rule would make the good-will and reputation of the plaintiff depend not only upon the conduct of the plaintiff, but also upon the acts of the defendant and the excellence, or, which is more likely, the inferiority of his products."

"There is no part of the law which is more plastic than unfair competition, and what was not reckoned an actionable wrong twenty-five years ago may have become such today." Maison Prunier v. Prunier's Restaurant & Cafe, 159 Misc. 551 (288 N. Y. Supp. 529). "This is due partly to the flexibility and breadth of equitable relief and partly to changing methods of business and changing standards of commercial morality." 3 Am. Law Inst. Restatement Torts, p. 538. For other cases supporting the view that actual and direct market competition is not a necessary prerequisite to equitable relief in an action for unfair competition, see Great Atlantic & P. Tea Co. v. A. & P. Radio Stores, 20 Fed. Supp. 703; Alfred Dunhill of London Inc. v. Dunhill Shirt Shop, 3 Fed. Supp. 487; John Forsythe Co. v. Forsythe Shoe Corp., 234 App. Div. 355 (254 N. Y. Supp. 584); Bond Stores v. Bond Stores, 104 Fed. 2d, 124; Tecla Corp. v. Salon Tecla, 249 N. Y. 157 (163 N. E. 134). See also 52 Am. Jur. 576, § 97; 63 C. J. 390; 148 A. L. R. 12 (81).

Under this view, the courts have recognized that diversion of trade and the attendant direct loss of sales is not the only injury that may result from infringement of a trade name, but that other injuries would necessarily follow, such as an injury to the complaining party's reputation and good will. Lady Esther Ltd. v. Lady Esther Corset Shoppe, 317 Ill. App. 451 (46 N. E. 2d, 165, 148 A. L. R. 6); Colorado National Co. v. Colorado National Bank of Denver, 95 Colo. 386 (36 Pac. 2d, 454); Rector v. Rector's Tavern Inc., 163 Misc. 213 (299 N. Y. Supp. 26). In Yale Electric Corp. v. Robertson, 26 Fed. 2d, 972, Judge Learned Hand very clearly expressed the Federal view as follows: "However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose

quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor, and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful." Other theories upon which the courts have based the granting of equitable relief are "the forestalling of the normal potential expansion of his business (148 A. L. R. 72, 73), or the 'whittling away' or 'dilution' of his trade-mark or trade name or symbols (148 A. L. R. 75, 77; Tiffany & Co. v. Tiffany Productions Inc., 264 N. Y. S. 459). Unjust enrichment has also been considered as a basis of relief. 148 A. L. R. 68, 74; Kotabs Inc. v. Kotex Co., 50 Fed. 2d, 810." 52 Am. Jur., 577, § 98. The ultimate wrong under all these theories of relief is that there will be a confusion on the part of the public as to the origin or source of the goods or services.

It has been said that "in few branches of the law are the particular facts of a case so important as in the realm of unfair competition." Maison Prunier v. Prunier's Restaurant and Cafe, supra. So far as material here, it is alleged in the petition of Kay Jewelry Company: that it has been engaged in the retail credit jewelry business at No. 3 Peachtree Street, Atlanta Georgia, since 1936; that, while its principal business is the retail sale of jewelry, it also sells other items not ordinarily sold in jewelry stores, such as radios, china, kitchen utensils, luggage, etc.; that the original company bearing the name "Kay" was organized more than 30 years ago, and that company has granted permission to the petitioner to operate under the name of "Kay," which name has been registered in the Federal Copyright Office, as well as in the various States of the United States; that the various "Kay" companies, while organized as separate corporations, utilize the services of a Washington, D. C., corporation, known as Kay Associated Stores, which renders special services to them, including advertising and promotion; that the Kay Stores for many years did substantial national advertising in the leading magazines of the country; that, since the opening of the petitioner's store in Atlanta, the business has been extensively and consistently advertised in the newspapers and on the various

radio chains which serve the city, and the petitioner has expended on local advertising, during the period it has been in business, more than a quarter of a million dollars; that in its advertising the petitioner and other Kay stores have used the name of "Kay's," "Kay," "Kay Jewelry Company," and "Kay, Jewelers"; that the name "Kay" has been set forth in large letters on the exterior of the store occupied by the petitioner; that the petitioner, in its advertising, has made use of slogans such as "It's O. K. to owe Kay," "Stop at Kay's today," "Pay Kay pay day," and it has particularly concentrated upon its slogan, "It's O. K. to owe Kay;" that the use of the slogans has been so consistent and extensive that they are now identified with the business of the petitioner in the minds of the general public without further identification; that in its advertising it has stressed the credit feature of its operation; that the nature and extent of the advertising, as well as the manner and method in which the petitioner has conducted its business, has resulted in the fact that the petitioner has achieved a high position in the retail credit field in Atlanta, Georgia; and that there is attached to the name "Kay" and "Kay's" great financial and business value.

It was further alleged: that the defendants opened a store at 114 Whitehall Street, Atlanta, Georgia, for the purpose of conducting a retail credit clothing business, and they are trading under the firm name and style of Kay's Credit Clothiers; that the store is located in substantially the same retail shopping district as that of the petitioner, about two blocks therefrom; that construction of the front of the building is still in progress, but that it is the information and belief of the petitioner that the defendants intend to place the name "Kay's" thereon in large letters; that certain cards have been placed in the store windows, and advertisements have been inserted in the Atlanta newspapers showing that the store is being conducted and is to be conducted under the name of "Kay's" or "Kay's Credit Clothiers"; that the opening of the defendants' store was preceded and accompanied by advertisements in the Atlanta papers in which the word "Kay" was prominently used in large letters and the words, "Credit Clothiers," in much smaller print; that the writing of the word "Kay" was made in print which was identical with the form of the petitioner's use of "Kay" or "Kay's"; that the adver-

tisement stressed the use of the Kay's Credit Plan; that there are now inserted in the show windows of the defendants' store large cards which bear only the word "Kay's."

It was charged in the petition that the defendants' "selection of the word 'Kay' or 'Kay's' was and is for the fraudulent, illegal, and unfair purpose of capitalizing on and reaping the benefits of the advertising, reputation, good will, and name of petitioner and for the purpose of deceiving, misleading, and confusing the public"; "that, if the defendants are permitted to continue the use of said name, the defendants will reap a large measure of the benefit from the advertising, reputation, and good will and name of petitioner, to which benefit petitioner alone is entitled and in the enjoyment of which petitioner is entitled to be protected"; that "the use by the defendants of the name 'Kay' and 'Kay's' will and does confuse and mislead the public, and the petitioner shows that the defendants' use of said name constitutes unfair trade practices"; that the defendants ignored the petitioner's notice to discontinue the use of the trade name; and that it has no adequate remedy at law.

For cases dealing with the right of a person or corporation to acquire and use a trade name exclusively, and the protection afforded by a court of equity against a fraudulent infringement thereof, see *Rome Machinery &c. Co.* v. *Davis*, 135 *Ga.* 17 (68 S. E. 800); *Carter* v. *Carter Electric Co.*, supra; *Saunders System* v. *Drive-It Yourself Co.*, 158 *Ga.* 1 (123 S. E. 132); *Atlanta Paper Co.* v. *Jacksonville Paper Co.*, supra; *Gano* v. *Gano*, 203 *Ga.* 637 (47 S. E. 2d, 741). See also 150 A. L. R. 1067 (Ann., Secondary Meaning in Law of Unfair Competition).

In the light of modern business trends in marketing and advertising, we think the better view of the question is that it is not essential, as a prerequisite to the granting of equitable relief in an action for infringement of a trade name, that actual and direct market competition between the litigants be shown, and that the test as to whether equitable relief is available should not be limited to those cases where it is shown that there has been an actual diversion of trade from one business to another. The good will and reputation of a business is as much an asset as its physical properties, and it may as well be the subject of a fraudulent encroachment by an infringer. Accordingly, the allegations of

the petition, admitted by the general demurrer interposed thereto to be true, are sufficient to show that the general public might be deceived and misled into believing that the goods of the defendants are the goods of the plaintiff, or that the plaintiff is in some way connected with, or is a sponsor of the defendants, and that the good will and reputation of the plaintiff, which it has built up at a great expense over a period of years, might be gradually "diluted" or "whittled" away. "Courts of equity ought not be so feeble as to be unable to prevent this." Lady Esther, Ltd. *v*. Lady Esther Corset Shoppe, supra. Upon proper proof of the allegations of the petition, the plaintiff would be entitled to the injunctive relief prayed.

*Judgment reversed. Jenkins, Chief Justice, Duckworth, Presiding Justice, Atkinson and Head, Justices, and Judge Graham concur. Wyatt, Justice, dissents.*