## GRAYSON-ROBINSON STORES INC. *v.* ONEIDA LTD.

No. 18091. ARGUED JANUARY 15, 1953—DECIDED FEBRUARY 24, 1953.

*Alston, Foster, Sibley & Miller, James E. Thomas* and *Philip H. Alston Jr.,* for plaintiff in error.

*Robert B. Troutman, Spalding, Sibley, Troutman & Kelley, James M. Sibley, W. K. Meadow, Nims, Martin, Halliday, Whitman & Williamson* and *Orville E. Cummings,* contra.

*Gambrell, Harlan, Barwick, Russell & Swift* and *Robt. R. Richardson,* for party at interest not party to record.

CANDLER, Justice. Oneida Ltd. brought this action against Grayson-Robinson Stores Inc. under Georgia's Fair Trade Act of 1937 (Ga. L. 1937, p. 800), and particularly under section 6 of the act, which reads as follows: "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this Act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person

damaged thereby." The petition in substance alleges: The plaintiff, a New York corporation, manufactures and sells in interstate commerce silverware under the trade-mark or trade name of "Community." Its products sold under this name enjoy a good reputation, and the plaintiff's good will is associated with the trade-mark. The plaintiff has entered into contracts establishing minimum retail sale prices of its products with retailers in the State of Georgia. Sales are made by the plaintiff to retailers operating under minimum retail-sales contracts, and "Community" silverware is advertised and sold to the retail trade at the price so fixed. The defendant operates a retail store in Atlanta, Georgia, and advertises, offers for sale, and sells "Community" products, which it purchases from sources other than the manufacturer, at prices less than the prices fixed by the plaintiff under its "fair trade contracts." The defendant conducts these activities in utter disregard of the fixed retail sales-price schedules issued by the plaintiff and wilfully and knowingly sells merchandise bearing the name "Community" at less than the prices so fixed. These sales by the defendant are "loss leader" sales. The plaintiff has no adequate remedy at law for the injury to its good will and relations with its dealers, which it is incurring by reason of the defendant's sales below the plaintiff's schedule of fixed prices. The defendant has signed no contract with the plaintiff under the provisions of Georgia's Fair Trade Act, but is known in the vernacular as a "nonsigner" of the trade agreement contemplated by the act. The prayers are for process, injunction, and general relief.

The petition was demurred to generally as stating no cause of action, upon the ground that Georgia's Fair Trade Act of 1937 has no force and effect and is null and void because it was, when enacted and approved on March 4, 1937, contrary to and inconsistent with the provisions of the Sherman Act, which Congress passed on July 2, 1890; and upon the further ground that the Georgia act of 1937, when passed by the General Assembly, offended for stated reasons enumerated provisions of the Georgia Constitution of 1877. After a hearing, the court overruled all of the grounds of the general demurrer. The defendant excepted.

■ It is contended by the defendant and argued by its counsel that Georgia's Fair Trade Act, which was approved on

March 4, 1937, was ab initio void, since the General Assembly had no power to enact it. This position is well taken. The Constitution of the United States by article 6, clause 2, provides: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or laws of any State to the contrary notwithstanding." Code, § 1-602. And our Constitution of 1877, as well as that of 1945, provides the same. Code, § 2-8501; Code (Ann.), § 2-8001. See, in this connection, *Southern Ry. Co.* v. *Atlanta Sand .& Supply Co.*, 135 *Ga.* 35, 39 (68 S. E. 807); *Gainey* v. *Bank of Thomasville*, 176 *Ga.* 736 (168 S. E. 877); *Ford* v. *Lone Star Cement Co.*, 181 *Ga.* 212, 215 (181 S. E. 773). And by article 1, section 8, subsection 3, of the Federal Constitution, Congress has exclusive power "To regulate Commerce with foreign Nations, and among the several States and with the Indian Tribes." Code, § 1-125. Exercising this power, Congress on July 2, 1890, passed the Sherman Act (26 Stat. 209, 15 U. S. C. § 1), which declared illegal "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States or with foreign Nations." Under the provisions of the Sherman Act, as originally passed by Congress, interstate resale price-fixing and price-maintenance arrangements, by contract or otherwise, were prohibited; they were "in restraint of trade," and therefore illegal per se. Dr. Miles Medical Company *v.* John D. Park & Sons Co., 220 U. S. 373 (31 Sup. Ct. 376, 55 L. ed. 502); United States *v.* Socony Vacuum Oil Co., 310 U. S. 150 (60 Sup. Ct. 811, 84 L. ed. 1129); Kiefer-Stewart Co. *v.* Joseph E. Seagram & Sons, 340 U. S. 211 (71 Sup. Ct. 259, 95 L. ed. 219). But Congress on August 17, 1937, passed the Miller-Tydings Act (50 Stat. 693, 15 U. S. C. § 1), as an amendment to § 1 of the Sherman Act, and that amendment provides in material part that "nothing herein contained shall render illegal, contracts or agreements prescribing minimum prices for the resale" of specified commodities when "contracts or agreements of that description are lawful as applied to intrastate transactions" under local law. In 1951, the

Supreme Court of the United States in Schwegmann Bros. *v.*
Calvert Distillers Corp., 341 U. S. 384, 386 (71 Sup. Ct. 745,
95 L. ed. 1035), held that the Miller-Tydings Amendment to
the Sherman Act excepted only "contracts or agreements" pre-
scribing minimum prices for the resale of trade-marked com-
modities where such contracts or agreements were valid under
State statute, and that a retailer who had not signed a contract
for price maintenance was not to be subjected to the schedule
of a price-maintenance plan. See also Sunbeam Corp. *v.* Went-
ling, 185 Fed. 2d, 903; s. c. 192 Fed. 2d, 7. However, Georgia's
Fair Trade Act was passed by the legislature prior to the Miller-
Tydings amendment to the Sherman Act.

But it is argued by counsel for the defendant in error that
Georgia's Fair Trade Act of 1937 no longer offends the Sherman
Act, since it was entirely removed from its prohibitive provi-
sions when Congress on July 14, 1952, passed the McGuire Act
(66 Stat. 632, 15 U. S. C. § 45), which in part recites: "it is the
purpose of this Act to protect the rights of the States under the
United States Constitution to regulate their internal affairs and
more particularly to enact statutes and laws, and to adopt poli-
cies, which authorize contracts and agreements prescribing mini-
mum or stipulated prices for the resale of commodities and to
extend the minimum or stipulated prices prescribed by such con-
tracts and agreements to persons who are not parties thereto.
It is the further purpose of this Act to permit such statutes,
laws, and public policies to apply to commodities, contracts,
agreements, and activities in or affecting interstate or foreign
commerce"; and which by section 3 also provides: "Nothing
contained in this Act or in any of the Antitrust Acts shall render
unlawful the exercise or the enforcement of any right or right
of action created by any statute, law, or public policy now or
hereafter in effect in any State, Territory or the District of
Columbia, which in substance provides that wilfully and know-
ingly advertising, offering for sale, or selling any commodity at
less than the price or prices prescribed in such contracts or agree-
ments whether the person so advertising, offering for sale or
selling is or is not a party to such a contract or agreement, is
unfair competition and is actionable at the suit of any person
damaged thereby."

So we accordingly agree that the provisions of Georgia's Fair Trade Act are not prohibited by the Sherman Act as amended by the Miller-Tydings Act and by the McGuire Act; but we do not agree with the contention that Georgia's act became valid, without re-enactment, after the Sherman Act was thus amended. Since Georgia's Fair Trade Act was contrary to and inconsistent with the terms of the Sherman Act before it was amended by the Miller-Tydings Act and the McGuire Act, it offended the supremacy clause as well as the commerce clause of the Federal Constitution, and our Constitution of 1945 by article 1, section 4, paragraph 1, declares that legislative acts which violate the Constitution of the United States are void and the judiciary shall so declare them. Code (Ann.), § 2-402. The time with reference to which the constitutionality of an act is to be determined is the date of its passage by the enacting body (*Jones* v. *McCaskill*, 112 *Ga.* 453, 37 S. E. 724) ; and if it is unconstitutional then, it is forever void. *Christian* v. *Moreland*, 203 *Ga.* 20 (45 S. E. 2d, 201). "The general rule is that an unconstitutional statute, though having the form and name of law, is in reality no law, but is wholly void, and in legal contemplation is as inoperative as if it had never been passed. Such a statute leaves the question that it purports to settle just as it would be had the statute not been enacted." 11 Am. Jur., Constitutional Law, 827, § 148. The Supreme Court of West Virginia in State v. Miller, 66 W. Va. 436 (66 S. E. 522, 19 Ann. Cas. 604), held that "A void statute can be made effective only by re-enactment," and as authority for its ruling cited the Georgia case of *Jones* v. *McCaskill,* supra, and the cases of State v. Tufly, 20 Nev. 427 (22 Pac. 1054, 19 Am. St. R. 374) ; Comstock Mill &c. Co. v. Allen, 21 Nev. 325 (31 Pac. 434) ; City of Erie v. Brady, 150 Pa. 462 (24 Atl. 641) ; Seneca Mining Co. v. Osmun, 82 Mich. 573 (47 N. W. 25, 9 L. R. A. 770) ; Banaz v. Smith, 133 Cal. 102 (65 Pac. 309). "It is clear that Congress cannot, by authorization or ratification give the slightest effect to a state law or Constitution which is in conflict with the Constitution of the United States. Whether an act of Congress can validate state statutes which were previously invalid because inconsistent with Federal legislation has not been uniformly decided. One view states that a state statute which was unconstitutional be-

cause it amounted to a violation of the power of Congress over interstate commerce is not validated by an act of Congress dealing with the subject matter which would render a later application of the state act merely supplemental to the act of Congress. This holding results from the theory that the removal of constitutional objections to an unconstitutional statute does not validate or revive it." 11 Am. Jur., Constitutional Law, 833, § 151. In support of this view, the author cites, among other cases, State *v.* Miller, supra, which cites and follows our ruling in *Jones* v. *McCaskill,* supra. This court in *Wilkins* v. *Mayor &c. of Savannah,* 152 *Ga.* 638 (111 S. E. 42), followed the full-bench ruling in *Jones* v. *McCaskill,* and at page 643 said: "By the [legislature's] act of August 18, 1919, the city is authorized to charge for repaving its streets the entire cost thereof to abutting-property owners. This special act was passed when the general law embraced in section 870 of the Code was in force, and seems to us to be clearly in conflict with the provision of the Constitution of this State which forbids the passage of any special act for which provision had been made by an existing general law. This constitutional infirmity of the act of August 18, 1919, is not cured by the fact that this section of the Code was amended on August 19, 1919, providing that 'where any change or modification is made in the charter of any city having a population of not less than 65,000 and not more than 100,000, in regard to the method of paving, by an amendment to such charter, provision may be made in such amendment for the renewal and repairing of any existing pavement under the provisions of such amendment.' Ga. L. 1919, p. 81. This remedy came too late to save the fatal malady of the act of August 18, 1919." Again, in *Reynolds* v. *Brosnan,* 170 *Ga.* 773 (154 S. E. 264), we unanimously held that a zoning statute for the City of Albany, which, when passed by the legislature in 1923, was unauthorized by the Constitution of 1877, did not become a valid statute by the adoption of a subsequent amendment to the Constitution authorizing it. See, in this connection and to the same effect, *Norris* v. *Town of Union City,* 184 *Ga.* 283 (191 S. E. 105) ; *Jones* v. *McCaskill,* supra; Atkinson *v.* Southern Express Co., 94 S. C. 444 (78 S. E. 516, 48 L. R. A. (N. S.) 349). In the case last cited and at page 452 of the opinion, the court said:

"The removal of the constitutional objections to a statute, that rendered it null and void, does not by operation of law give it force and effect, nor can it be made valid by a subsequent statute." As to this, we have not overlooked, nor failed to consider, In Re Rahrer (Wilkinson *v.* Rahrer), 140 U. S. 545 (11 Sup. Ct. 865, 35 L. ed. 572), cited and strongly relied upon by counsel for the defendant in error. However, we see no conflict. There, unlike here, the state statute involved was not void when enacted by the legislature. It dealt with a subject— intoxicating liquors, over which Congress did not have exclusive regulating power under the Federal Constitution, and in that case the court said: "This is not the case of a law enacted in the unauthorized exercise of a power exclusively confided to Congress, but of a law which it was competent for the State to pass, but which could not operate upon articles [imported liquors] occupying a certain situation until the passage of the act of Congress. The act in terms removed the obstacle, and we perceive no adequate ground for adjudging that a re-enactment of the state law was required before it could have the effect upon imported which it had always had upon domestic property." Accordingly, the petition was subject to general demurrer.

■ Moreover, and for the reasons stated in *Harris* v. *Duncan,* 208 *Ga.* 561 (67 S. E. 2d, 692), Georgia's Fair Trade Act of 1937 offends article 1, section 1, paragraph 3 of our Constitution of 1945, which provides that "No person shall be deprived of life, liberty, or property except by due process of law." Code (Ann.), § 2-103. And for that reason the act is null and void.

For the reasons stated in the preceding divisions, the judgment complained of is erroneous.

*Judgment reversed. All the Justices concur except Atkinson, P. J., not participating. Head, J., concurs specially.*

HEAD, Justice, concurring specially. Our statutes (Code, § 37-712 and Chapter 106-99) do not draw any distinction between a "trade-mark" and a "trade name." In many of the decisions by the courts of this country in actions alleging unfair competition, little regard is given to any legal or technical distinction between a trade-mark and a trade name, since in either instance the most common form of infringement or imitation

is the use by another in a manner calculated to deceive the public. Unfair competition, however, according to many authorities, may exist in various other forms. In the present case the sole unfair competition alleged is a violation of contracts based on the minimum retail resale prices established by Oneida Ltd., under provisions of the act known as the "Fair Trade Act," Ga. L. 1937, pp. 800-804 (Code, Ann. Supp., § 106-401 et seq.). Since the petitioner did not seek relief for any alleged acts of the defendant in deceiving, misleading, and confusing the public, and capitalizing on the reputation and good will of the petitioner, I concur in the judgment of reversal.

*Harris* v. *Duncan,* 208 *Ga.* 561 (67 S. E. 2d, 692) (cited in division 3 of the opinion), would not be applicable in an action seeking relief against the defendant for deceiving, misleading, and confusing the public, and capitalizing on the good will and reputation of the petitioner by an unauthorized use of its trade-mark or trade name. In this connection, see *Kay Jewelry Co.* v. *Kapiloff,* 204 *Ga.* 209 (49 S. E. 2d, 19); and *Gordy* v. *Dunwody* 209 *Ga.* 627.