Cochran et al v. Edwards et al.

---

COCHRAN, ET AL, VS. EDWARDS, ET AL.

1. COUNTY SEATS: *Petition for removal of; Repetition of.*
When at an election for the removal of a county seat, the proposed removal is defeated, the time within which another petition for removal may be filed, is not limited.

Cochran et al v. Edwards et al.

APPEAL from *Sharp* Circuit Court.

HON. R. H. POWELL, Circuit Judge.

*J. L. Abernethy* for appellants.

1. It could not have been the intention of the Legislature, *sec.* 3, *Act* 1875, to vest in one-third of the voters of a county the power to have repeated elections, without limit, at the expense and annoyance of the other two-thirds, for the removal of a county seat to one and the same point. Such a construction is unreasonable and absurd.

2. The Circuit Court should have heard the case *de novo,* and made all necessary orders. *Gantt's Dig.*, *secs.* 1191, 1195, 1198.

*John H. Holt* for appellees.

The petition conformed *in every particular* to *act, Mch.* 2d, 1875. *Section* 12 of this act repealed *sec.* 973, *Gantt's Digest*, and the response set up no defense. *Sec.* 9 of said act only applies where the county seat has *actually been changed* in ten years.

ENGLISH, C. J. At the July term, 1880, of the county court of Sharp county, a petition was presented by electors of the county praying for a removal of the county seat from EVENING SHADE to CENTER.

The petition appears to have been in conformity with the provisions of the act of March 2nd, 1875, providing for locating and changing county seats. *Acts of* 1874–5, *p.* 201.

James P. Cochran, and others, tax-payers and voters of the county, filed a remonstrance, in which they alleged, in

substance, that the petitioners theretofore, at the July term, 1879, of the court, by petition, obtained an order for an election on a proposition to remove the county seat from Evening Shade to Center, which election was held on the twenty-fifth day of August, 1879. That the voting population of the county, at that time, according to the assessment list, numbered 1492, and upon casting up the votes polled at said election it was found that there were only 525 votes for removal, and so the court declared that the proposition had failed.

That the petition for removal, order for election, returns, order of court declaring the result, &c., were destroyed by the burning of the court house, records, &c., January 20th, 1880.

The court sustained a demurrer to the remonstrance interposed by the petitioners, and the remonstrants rested.

The petition for removal was then heard by the court, and it was made to appear to the court that more than one-third of the qualified voters of the county had joined in the petition; that the town of Center, in Sharp county, was designated as the place to which petitioners desired the county seat moved, which was fully designated; that the abstract of the title to the land upon which it was proposed to locate the county site was perfect; that the amount and terms of donation of said lands to the county, for county purposes, were fully set forth, and that the law had in all things been fully complied with, &c. It was therefore adjudged by the court that the prayer of petitioners be granted, and an order was made that an election be held on the sixth of September, 1880, on the proposition for removal, &c.

The remonstrants appealed to the Circuit Court where the demurrer to the remonstrance was submitted and sustained, and the order of the county court for an election affirmed and remanded.

The remonstrants appealed.

By section 9 of the act of March 2nd, 1875, providing for locating and changing county seats: "Whenever an election has been held in pursuance of this act, and the county seat changed in compliance therewith, it shall not be lawful to change the county seat again under ten years."

Appellants did not plead that an election had been held under the act, and the county seat of Sharp county changed, within ten years, (see *Varner, et al,* v. *Simmons, et al,* 33 *Ark.,* 212), but that an order had been made for an election on a petition for removal, and that an election was held and the proposed removal defeated by the electors.

There is nothing in the act which limits the time in which petitions for removal may be repeated; and if public inconvenience and expense may arise from frequent petitions and orders for elections, as submitted by counsel for appellants, the evil must be remedied by legislative amendment of the act. The courts must administer the law as it is written.

Affirmed.