ARGUED MARCH 9, 1964—DECIDED APRIL 9, 1964—REHEARING DENIED APRIL 21, 1964.

*B. Clarence Mayfield, E. H. Gadsden,* for plaintiffs in error.

*Andrew J. Ryan, Jr., Solicitor, Robert E. Barker, Assistant Solicitor,* contra.

22398. DURHAM et al. v. THE STATE.
22399. GERMAN et al. v. THE STATE.
22402. LLOYD et al. v. THE STATE.

ARGUED MARCH 9, 1964—DECIDED APRIL 9, 1964—REHEARING
DENIED APRIL 21, 1964.

834

*B. Clarence Mayfield, E. H. Gadsden,* for plaintiffs in error.

*Andrew J. Ryan, Jr., Solicitor, Robert E. Barker, Assistant Solicitor,* contra.

QUILLIAN, Justice. ■ The bill of exceptions assigns as error the judgment overruling the general demurrers to the accusation charging the defendants with the offense of trespass under Ga. L. 1960, p. 142 (*Code Ann.* § 26-3005). The demurrers attack the statute as unconstitutional on precisely the same grounds as did the demurrers in the case of *Clark v. State,* 219 Ga. 680 (135 SE2d 270), decided January 30, 1964. This court in the *Clark* case held the statute to be constitutional and valid. The ruling there made is controlling in the present case.

■ The bill of exceptions contains an assignment of error com-

plaining that the trial judge, after hearing evidence, overruled the defendants' plea in abatement. Some of the grounds of the plea reiterate the attack made on the constitutionality of the Act of 1960 contained in the general demurrer, and the ruling made in the preceding division of this opinion is applicable to them. Other grounds of the plea allege that the defendants were deprived of certain constitutional rights by the manner in which the statute was applied to their conduct on the occasion they were arrested. These grounds especially complain that the arrest of the defendants deprived them of the right to peacefully assemble at Morrison's Cafeteria and exercise their right of free speech by protesting the custom of the restaurant of serving only white people, thereby discriminating against members of the Negro race. In this manner the defendants allege they were denied equal protection of the law and due process in violation of the Fourteenth Amendment to the United States Constitution and Art. I, Sec. I, Par. III of the Georgia Constitution, and that their right of free speech and assembly was abridged in contravention of the First Amendment and Art. I, Sec. I, Par. XXIV of the Georgia Constitution.

In considering the issues presented by the plea in abatement it must be remembered none of the sacred rights guaranteed by the Constitution of the United States and of this State are unabridged, unrestrained and absolute. Cantwell v. Connecticut, 310 U.S. 296 (60 SC 900, 84 LE 1213); *Clark v. State,* 219 Ga. 680, supra. The freedom to assemble, a right zealously guarded by the court, and properly so, finds its primary limitation in the words of the First Amendment to the Constitution of the United States "to peacefully assemble."

In the case of Edwards v. South Carolina, 372 U.S. 229 (83 SC 680, 9 LE2d 697), although the court reversed a judgment finding the defendants guilty of the common law offense of trespass upon the grounds of the State Capitol at Columbia, South Carolina, the opinion carefully points out the fact that no one was prevented by the defendants (referred to therein as the petitioners) from going upon or leaving the grounds, that they did not impede traffic, or otherwise infringe upon the rights of other persons or of the public in general. After making these observations, the Supreme Court recognizes the principle that the

right to assemble is not absolute, and holds: "There was no violence or threat of violence on their [the defendants] part, or on the part of any member of the crowd watching them. . . . If, for example, the petitioners had been convicted upon evidence that they had violated a law regulating traffic, or had disobeyed a law reasonably limiting the periods during which the State House grounds were open to the public, this would be a different case." Edwards v. South Carolina, 372 U.S. 229, 236, supra.

As to free speech, it is held in Breard v. City of Alexandria, 341 U.S. 622 (71 SC 920, 95 LE 1233, 35 ALR2d 335), that freedom of speech or press does not mean that one can talk or distribute literature where, when, and how one chooses, but the right to do so must be adjusted to the rights of others.

In the splendid opinion of *Clark v. State*, 219 Ga. 680, supra, is the sound pronouncement: "Liberty stops where to extend it invades the liberty of another. Property is protected against unauthorized uses of life or liberty. Not only do all judges know that the actual value of property is in its use or sale in harmony with law, *Harris v. Duncan*, 208 Ga. 561 (67 SE2d 692), but every layman knows this. Any invasion, regardless of its degree of the owner's dominion over use or sale of his private property is indicated by the Fourteenth Amendment as well as [by] Art. I, Sec. I, Par. II of Georgia's Constitution (*Code Ann.* § 2-102). Therefore, this demurrant must abide by as well as rely upon the Fourteenth Amendment. Any intelligent court *must* hold that his liberty stops precisely where to extend it would trespass upon another's property. If one is granted the liberty to invade another's private property over the objection of the owner for any period of time, that same liberty would continue for all time, and the result is destruction of property without due process in direct violation of the Constitution. Therefore, one could find no constitutional process that would entitle him to commit the trespass forbidden by this statute, hence it denies him none. Compare Nash v. United States, 229 U.S. 373, 377 (33 SC 780, 57 LE 1232); International Harvester Co. v. Kentucky, 234 U.S. 216 (34 SC 853, 58 LE 1284); Collins v. Commonwealth of Kentucky, 234 U.S. 634 (34 SC 924, 58 LE 1510); Connally v. General Const. Co., 269 U.S. 385 (46 SC 126, 70 LE 322); Lanzetta v. New Jersey, 306 U.S. 451 (59 SC 618, 83 LE 888); Lambert v. California, 355 U.S. 225 (78 SC 240, 2 LE2d 228)."

The opinion is a restatement of the first tenet of civilized society, that the rights of the individual extend to and end at the boundary of the rights of others.

The proprietor of Morrison's Cafeteria had a legal right to choose his patrons and no law, State or Federal, denied him, the owner of a privately owned establishment operated upon private property, from confining the services of the restaurant to members of a particular class or race. The rule is well stated in Slack v. Atlantic White Tower System, 181 FSupp. 124, 127 (affirmed 284 F2d 746): "Such segregation of the races as persists in restaurants in Baltimore is not required by any statute or decisional law of Maryland, nor by any general custom or practice of segregation in Baltimore City, but is the result of the business choice of the individual proprietors, catering to the desires or prejudices of their customers. . . . In the absence of statute, the rule is well established that an operator of a restaurant has the right to select the clientele he will serve, and to make such selection based on color, if he so desires."

The evidence adduced upon the trial of the Lloyd case showed the defendants, members of a company of about 25 persons, after Morrison's was closed for business according to its usual custom, and signs on the entrance door announced the restaurant was closed, came uninvited into the same through the exit door; some sat in the lobby, others sat on the floor and still others seated themselves in chairs at the tables. No announcement was made by the defendants or any of their company as to the purpose of their visit, none of the group requested any employee of the restaurant to serve them, and since the restaurant was operated solely as a cafeteria and no one came to the counters from which the food was served, they did not place themselves in a position to be served. They refused all requests by the assistant manager and police to leave.

In the Durham case the defendants, according to the State's evidence, leaned against the door of Morrison's and blocked the ingress of customers who desired to enter. The assistant manager in charge of the restaurant requested that the defendants leave the premises and they refused to leave. The defendants steadfastly denied being at the restaurant on the occasion when arrested but testified they were at another restaurant. This

testimony was contradicted by at least one police officer who positively identified both defendants and testified he was acquainted with them.

In the German case there was ample evidence to show that the defendants went upon the premises of Morrison's and were sitting or lying in the doorway so as to block the entrance to the establishment. They refused the request of the manager to leave the premises. A defendant in this case denied they did hinder entrance into the restaurant.

The State's evidence showed the defendants did not assemble peacefully, but intruded upon the property of another, wilfully interfered with the business the owner was there conducting and refused to surrender dominion of the premises upon the request of the owner's authorized agent. This conduct amounted to violence and was without question the wilful, unlawful invasion of the rights of another. There was ample evidence to authorize the judgment overruling the plea in abatement.

■ The general grounds of the motion for new trial present only the contention that the judgments finding the defendants guilty as charged were not supported by evidence. We have in the preceding division discussed the evidence submitted upon the trial. It is sufficient to prove every element of the offense charged in the accusation and fully authorized the defendants' conviction.

■ The only special grounds of the motion for new trial attempt to set up the same contentions as those asserted by the demurrer and plea in abatement. There was no error in overruling them.

■ The defendants except to an order of the trial judge denying the motion to acquit. The motion was tantamount to a motion for directed verdict. *Smith v. Smith,* 219 Ga. 739 (135 SE2d 866). "It is not error in a criminal case to refuse to direct a verdict of not guilty." *Winford v. State,* 213 Ga. 396 (5) (99 SE2d 120), and cases cited.

■ The bill of exceptions contains the assignment of error: "To the rulings of the court refusing to admit certain evidence pursuant to the plea in abatement, plaintiffs in error then excepted, now except and assign said rulings as error as being contrary to law and say that the court erred in making said rulings."

For a variety of reasons the assignment of error is not sufficient to present any question for this court's determination: it is a ruling on the admissibility of evidence that should have been presented by motion for new trial, *Jones v. Andrews*, 89 Ga. App. 734 (81 SE2d 304); the evidence alleged to have been excluded is not set out in the exception or otherwise therein identified. *Colman v. State*, 213 Ga. 9, 11 (4) (96 SE2d 611); *Charlton v. State*, 214 Ga. 778 (2) (107 SE2d 840); *Cotherman v. Cotherman*, 218 Ga. 486, 487 (128 SE2d 728). See Ga. L. 1953, Nov. Sess., pp. 440, 447 (*Code Ann.* § 6-801); Ga. L. 1957, pp. 224, 232 (*Code Ann.* § 6-901).

*Judgments affirmed. All the Justices concur.*