32525, 32526. POPE v. CITY OF ATLANTA et al.; and vice versa.

UNDERCOFLER, Presiding Justice.

Mrs. Pope wishes to build a tennis court on the rear portion of her residence property which borders on the Chattahoochee River. The City of Atlanta issued a stop work order claiming that at least part of the tennis court was within 150 feet of the river and the river's floodplain and that she could not build the court without violating the Metropolitan River Protection Act (River Act), Ga. L. 1973 p. 128, *as amended,* Ga. L. 1975, p. 837. Mrs. Pope brought suit in the federal district court claiming the statute was unconstitutional on federal grounds. That case was dismissed. She then brought this suit in the state court asserting the state constitutional grounds that the Act violated her state due process and eminent domain

rights, 1976 Const., Art. I, Sec. I, Par. I (Code Ann. § 2-101); Art. I, Sec. III, Par. I (Code Ann. § 2-301), and was an attempt by the state to exercise zoning powers delegated to local governing authorities, 1976 Const., Art. XI, Sec. IV, Par II (Code Ann. § 2-6102 (15)). The trial court ruled in our case No. 32525 that the state due process and eminent domain grounds were barred by res judicata by the litigation of the federal due process grounds in the federal court. The trial court held also in case No. 32526 that the River Act was an unconstitutional attempt to zone by the state, but that it was validly adopted by the City of Atlanta as a zoning ordinance, which it could enforce. Accordingly, the trial court ordered the city to hold a hearing before the Zoning Board of Adjustments. These appeals followed. We reverse on both grounds.

1. The trial court erred in holding that the federal court litigation was res judicata of the state due process and eminent domain grounds. Questions of the construction of the State Constitution are strictly matters for the highest court of this state. The construction of similar federal constitutional provisions, though persuasive authority, is not binding on this state's construction of its own Constitution.[1] *Harris v. Duncan,* 208 Ga. 561 (67 SE2d 692) (1951); *National Mtg. Corp. v. Suttles,* 194 Ga. 768 (22 SE2d 386) (1942); *Kennemer v. State,* 154 Ga. 139 (113 SE 551) (1922). See generally, 21 CJS 360, Courts, § 205. We note especially *Harris v. Duncan,* supra, where this court held that price fixing by a state milk control board violated the state due process clause even though the United States Supreme Court had already ruled that such a scheme was not unconstitutional under the federal due process clause. Therefore, we conclude that Mrs. Pope's state constitutional claims here are separate from her federal constitutional claims.

---

[1] The Federal Constitution, which is of course binding on the states, thus provides a minimum standard, but the state may be more restrictive under its own constitution. Oregon v. Hass, 420 U. S. 714, 719, n. 4 (95 SC 1215) (1975).

The doctrine of res judicata involves prior litigation by the same parties on the same subject matter in a court of competent jurisdiction as to all issues which were raised or *which could have been raised.* Code Ann. § 110-501; *Price v. Ga. Industrial Realty Co.,* 132 Ga. App. 107 (207 SE2d 556) (1974). Where state claims which "could have been raised" in the federal litigation would have been pendent[2] had they been presented to the federal court, this court, in applying its res judicata statute, will use the same rules that the federal court would have used in determining whether it would exercise pendent jurisdiction. If the federal court would have *retained* jurisdiction of the pendent state claims had they been raised, then a subsequent suit in state court would be *barred* by res judicata; if the federal court would have *refrained* from exercising its pendent jurisdiction over the state claims, then the subsequent suit in the state court would *not be barred* by res judicata.[3] In so doing, we

---

[2] Pendent jurisdiction relates to issues of which the federal court would not have jurisdiction if raised independently of a federal claim. "Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority...,' U. S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. Levering & Garrigues Co. v. Morrin, 289 U. S. 103. . . The state and federal claims must derive from a common nucleus of operative fact. . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers of America v. Gibbs, 383 U. S. 715, 725-726 (86 SC 1130, 16 LE2d 218) (1966). (Footnotes deleted.)

[3] "Had the court found a jurisdictional bar to reaching the state claim in Hurn [v. Oursler, 289 U. S. 238

conclude that the state issues in this case "substantially predominate" and would most likely have been left for state resolution had they been presented to the federal court. United Mine Workers of America v. Gibbs, 383 U. S. 715 (1966). Therefore, now that these important state issues are before the state courts, we will not apply our res judicata statute to bar this litigation.

We emphasize that the rule announced here applies only to federal pendent jurisdiction, that is, where the federal court would not independently have jurisdiction of the state question but acquires jurisdiction only because a federal question is involved. Also, the court must be convinced that the underlying purposes of the res judicata rule are advanced rather than defeated by not applying the rule. Here the suit attempts to enjoin a public body from acting under a statute alleged to be unconstitutional under the State Constitution. The statute governs a matter of great public importance. The issue had not been decided by the state courts. If the res judicata bar is applied the defendant will likely be sued again on the same issue by another person situated similarly to the plaintiff. In that event both the courts and the defendant must suffer the same procedural requirements and hearings as here, as well as the attendant delay, until the issue is again ripe for decision. A decision now will preclude further litigation. The public interest will be served by an early decision. The defendant will not be harmed. Judicial economy will result.

Because the trial court granted summary judgment in favor of the City of Atlanta and the state on the res judicata ground, it did not decide the state due process and eminent domain issues on the merits. Therefore, the judgment in case No. 32525 is reversed and the case remanded to the trial court for further proceedings.

2. The trial court erred in holding that the River Act

---

(53 SC 586, 77 LE 1148) (1933)], we assume that the doctrine of res judicata would not have been applicable in any subsequent state suit." United Mine Workers of America v. Gibbs, supra, p. 724. (Emphasis in original.)

constituted an attempt by the state to exercise zoning powers delegated by the Georgia Constitution to the local governing authorities. 1976 Const., Art. XI, Sec. IV, Par. II (Code Ann. § 2-6102 (15)). The state contends it validly enacted the River Act under its police power. 1976 Const., Art. III, Sec. VIII, Par. III (Code Ann. § 2-1403).

The zoning power granted to county and municipal governments is defined in the Georgia Constitution, supra, as "the power to provide within their respective jurisdictions for the zoning or districting of such political subdivisions for various uses and other or different uses prohibited in such zones or districts; to regulate the use for which said zones and districts may be set apart; and to regulate the plans for development and improvements on real estate therein." See Anderson, American Law of Zoning, § 1.13; 82 AmJur2d 387, Zoning and Planning, § 2.

The same paragraph of the Constitution also provides: "Except as otherwise provided in this Paragraph as to planning and zoning, nothing contained within this Paragraph shall operate to prohibit the General Assembly from enacting general laws relative to the above subject matters or to prohibit the General Assembly by general law from regulating, restricting or limiting the exercise of the above powers, . . ." Some of the powers included are "(6) Storm water and sewage collection and disposal systems. (7) Development, storage, treatment and purification and distribution of water." The state is thus not precluded from acting in these areas by general law.

The purposes of the River Act are set out in Section 3, Ga. L. 1973, p. 128 at pp. 130-131. "(a) The General Assembly finds that adequate supplies of clean drinking water constitute the life-blood of the great metropolitan areas of this State and are, therefore, essential to the health, welfare and economic progress of the State; that development adjacent to major streams in certain metropolitan areas requires special regulation to provide adequate protection for public water supplies; that siltation and urban runoff threaten such water supplies; that flood plain development unnecessarily exposes life and property to loss by flooding while increasing flood

risks for other area [sic]; that over-intensive development adjacent to major streams increases the frequency and severity of such flooding; that it is in the public interest to avoid future flood damage and possible loss of life, to control erosion and pollution and to protect the water quality of major streams in certain metropolitan areas.

"(b) The purpose of this Act is to provide a flexible and practical method whereby political subdivisions in certain metropolitan areas may utilize the police power of the State consistently and in accordance with a comprehensive plan to protect the public water supplies of such political subdivisions and of the area and to prevent floods and flood damage, to control erosion, siltation and intensity of development adjacent to major streams in such areas for such purposes, and to provide for comprehensive planning for stream corridors in such areas."

We conclude that the River Act does not constitute zoning within the definition set out in the Georgia Constitution and quoted above, but instead falls within the reserved powers of the state to act, along with the local governing authorities, with regard to the water system, as is set out in the purpose of the River Act. Therefore, the trial court erred in ruling otherwise and the judgment in case No. 32526 is reversed.

*Judgments reversed. All the Justices concur, except Hall, J., who dissents from Division 1.*

ARGUED JULY 12, 1977 — DECIDED
OCTOBER 18, 1977 — REHEARING DENIED
NOVEMBER 9, 1977.

*Moreton Rolleston, Jr., Arthur K. Bolton, Attorney General, Patricia T. Barmeyer, Assistant Attorney General,* for appellant.

*Ferrin Y. Mathews, Ralph H. Witt, Mary Carole Cooney, Arthur K. Bolton, Attorney General, Patricia T. Barmeyer, Assistant Attorney General,* for appellees.

*Furman Smith, Jr., William R. Bassett, Harvey M. Koenig,* amicus curiae.

HALL, Justice, dissenting.

I dissent from Division 1 on the application of the principles of res judicata. The court has impliedly (and correctly) rejected appellant's argument that her state and federal theories of relief constitute different causes of action. Since Mrs. Pope is seeking to relitigate the same cause of action she is barred by Code Ann. § 110-501: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside." Division 1 of the court's opinion can only be understood as an unprecedented exception to this general rule of claim preclusion.[1]

This decision is also contrary to existing case law. See e.g., *Chilivis v. Dasher,* 236 Ga. 669 (225 SE2d 32) (1976); *Hartell v. Searcy,* 32 Ga. 190 (1861). Our cases have consistently held that federal court judgments are entitled to the same preclusive effect as judgments of this state, yet Division 1 holds that in certain cases these judgments will be given less preclusive effect.[2] While prior cases could be distinguished, no fair distinction can be drawn which would support the result in this case.

The reason for this new rule is a policy choice to encourage plaintiffs to present their state constitutional claims only to state courts. I agree that this is preferable, for a decision on state law by a state court is entitled to the binding effect of stare decisis, while a decision by a federal

---

[1] The possibility that a plaintiff will lose her pendent claims by failing to present them to federal court has been noted by the commentators. Degnan, Federalized Res Judicata, 85 Yale L. J. 741, 772 (1976); Annot., 5 ALR3d 1040, 1056 (1956); Note, Problems of Parallel State and Federal Remedies, 71 Harv. L. Rev. 513, 523-524 (1958).

[2] The court's rule will give only collateral estoppel effect to federal court judgments when the test of Division 1 is met. Res judicata claim preclusion under Code Ann. § 110-501 is broader. See also, Restatement, Judgments, § 63.

court on the same issue would be entitled only to the binding effect of res judicata, which binds only the parties and their privies.[3] But I do not believe the rule in Division 1 will have the desired effect, and moreover I believe that even if it did the policies against the new rule predominate.

The rule in Division 1 applies only if there has been a prior federal suit in which the plaintiff failed to present a ground for relief under state law. What the rule says is that in such a case the state court will inquire as to whether the federal court would have abstained had the issue been presented. If the state court concludes that the federal court would have abstained, we will treat the case as if the court had in fact abstained. What does this accomplish?

Under general res judicata principles the plaintiff must present all grounds for relief or lose them. If he does not present them there is no decision; the plaintiff is simply barred from bringing a second suit. If he does present them, the federal court will abstain on issues which are suitable for abstention, the very same issues with which Division 1 is concerned. Once the federal court abstains, the plaintiff may litigate these issues in state court, for they are issues which could not be put in issue in the previous case. Code Ann. § 110-501. In other words, if we force plaintiffs to present all of their cases to the federal courts, we can accomplish the same result (so far as the policy of encouraging state court decisions on state law is concerned) as the rule in Division 1, without sacrificing the policies behind existing law.

One practical effect of this new rule is to save those cases, such as Mrs. Pope's, where the plaintiff has simply neglected to present all grounds for relief to the federal forum.[4] Insofar as the rule relieves plaintiffs from the mistakes of their lawyers it is directly contrary to the

---

[3] The federal decision would be merely persuasive authority in other cases.

[4] Mrs. Pope presented five federal and state law grounds for relief to the federal court. See Pope v. City of Atlanta, 418 FSupp. 665 (N.D. Ga. 1976). There is no

policy choice behind the res judicata principle. Mrs. Pope is no more deserving of this relief than any other plaintiff.

Of course, the rule goes further and encourages plaintiffs to withhold some of their grounds for relief from the federal court. We should not encourage this. If the claim is not presented we will have no decision by the federal court on whether it should refrain from hearing the issue. The question of whether the federal court should abstain is a question of federal court procedure and a discretionary decision by the federal judge. This issue is one of which should be left for the federal courts to decide, for they are the experts on federal procedure.

The result of Division 1 is to require our state courts to answer a hypothetical question of federal court procedure: if the plaintiff had presented his entire case to federal court, would that court, in the exercise of its sound discretion, have refused to decide the issues now presented? This question is not an easy one, and at least one state court has refused to consider it. Martin v. Phillips Petroleum Co., 455 SW2d 429, 437 (Tex. 1970). Moreover, the issue is entirely foreign to the areas of competence of state court judges. Thus the majority has created a difficult collateral issue which requires our courts to become familiar with and apply rules of federal court procedure as a preliminary step in deciding whether to hear a case. This adds to the burden on our courts.

Claim preclusion is not only supported by the policy of reducing unnecessary litigation. The primary policy behind the principle is to promote justice by avoiding the unnecessary expense, delay and uncertainty caused defendants by repeated lawsuits on the same cause of action. Repeated suits can be used to unjustly harass defendants, and may deny justice altogether. Yet the court approves a procedure by which a plaintiff can bring

---

indication of a choice to save the state constitutional issues for state court. Rather it appears that these issues were not even thought of until she lost in federal court.

two suits by choosing to start in federal court, and failing to present important state law issues to that forum. Even in cases where our courts will refuse to allow relitigation, the plaintiffs will be able to litigate the difficult question of whether the federal court would have abstained. This will provoke additional appeals. The procedural complexity created by this case will be a tool for harassing defendants, as well as a totally unnecessary burden on our courts.

We should require plaintiffs who choose a federal forum to present all their grounds for relief to that court. If issues are present which are arguably appropriate for abstention, the federal court can decide the question of whether it should abstain.[5] This will dispose of the issue without burdening our courts. Difficult state constitutional claims will still be referred to state courts.

There is another reason for disagreeing with Division 1. The scope and effect of a federal judgment is a matter of federal law. State courts are required to give full faith and credit to judgments of federal courts, and this requires that we give federal judgments at least the same preclusive effect as we would give judgments of our own courts. 28 USC § 1738; Stoll v. Gottlieb, 305 U. S. 165, 167, 170 (1938); Embry v. Palmer, 107 U. S. 3 (1882); Degnan, Federalized Res Judicata, 85 Yale L. J. 741, 742-750 (1976). The rule announced in Division 1 gives federal court judgments less preclusive effect than state court judgments, for if this case had been decided in a state court res judicata would apply. This rule results in a denial of full faith and credit to the federal judgment.

Of course, if the federal courts would not give the full preclusive effect to their judgments, we would not have to. But the rule is well settled that pendent state law claims which are not presented in federal court are precluded. Southwest Airlines Co. v. Texas International Airlines, 546 F2d 84, 92 (5th Cir. 1977); Woods Exploration and Production Co. v. Aluminum Co. of America, 438 F2d

---

[5] The federal court could also refer the issue to our courts for a decision, holding the federal action in abeyance.

1286, 1311-1316 (5th Cir. 1971). See United Mine Workers of America v. Gibbs, 383 U. S. 715, 723, 725, n. 12 (1966). The federal courts have been quite insistent on the issue of claim preclusion by former adjudication in federal court. See, e.g., Southwest Airlines Co. v. Texas International Airlines, supra; International Assn. of Machinists &c. v. Nix, 512 F2d 125 (5th Cir. 1975); Woods Exploration and Production Co. v. Aluminium Co. of America, supra. The rule in federal court is that a judgment for the defendant on a particular cause of action establishes his right to do what was done. Applied to this case, the rule means that the City of Atlanta has the right to restrain Mrs. Pope.

A decision in Mrs. Pope's favor by the trial court on remand would effectively nullify the federal judgment, and thus deny it full faith and credit. The rule announced in Division 1 is contrary to the statutory requirement that we give federal judgments the same effect as state judgments, and amounts to a denial of full faith and credit even where the same party prevails in both suits.

Finally, it is worth noting that the few cases by state courts which are closely on point are contrary to this decision. In Belliston v. Texas, 521 P2d 379 (Utah 1974), the Utah Supreme Court held that a state suit on state antitrust grounds was barred by the former adjudication of federal antitrust claims in federal court, even though the state issues were not presented to the federal court, and the federal court would have had only pendent jurisdiction of these claims. Accord, Ford Motor Co. v. Superior Court, 35 Cal. App. 3d 676 (110 Cal. Rptr. 59) (1973) (cited with approval in Slater v. Blackwood, 15 Cal. 3d 791 (126 Cal. Rptr. 225) (1976)); McCann v. Whitney, 25 NYS2d 354 (1941). Moreover, other state courts have held that they are required to give federal judgments the same preclusive effect that they would have in federal court. Levy v. Cohen, 19 Cal. 3d 165 (137 Cal. Rptr. 162) (1977); London v. City of Philadelphia, 412 Pa. 496 (194 A2d 901) (1963); Shell Oil Co. v. Texas Gas Transmission Corp., 176 S2d 692, 696-697 (La. App. 1965). See also Transworld Airlines v. Hughes, 317 A2d 114, 119 (Del. Ch. 1974) (dicta).

I would affirm the trial court insofar as it found that

the present suit is barred by res judicata, and vacate insofar as any other issue is reached.